## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GEORGE BANKS, | * | |
| Plaintiff, | * | |
| v. | * | Case No. 05-CV-01688-HHK |
| BANK OF AMERICA, N.A., | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### BANK OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

Defendant, Bank of America, N.A., by its undersigned attorneys and pursuant to F.R.Civ.P. 56, hereby moves this Honorable Court for the entry of summary judgment on all claims in Plaintiff's Amended Complaint on the grounds that Plaintiff has failed to state a claim upon which relief can be granted and Defendant is entitled to judgment as a matter of law.  In support of this Motion, Defendant refers the Court to the Memorandum in Support of Defendant's Motion for Summary Judgment filed contemporaneously herewith and incorporated herein.

WHEREFORE, for the reasons more fully set forth in the accompanying Memorandum, Defendant requests that its Motion for Summary Judgment on Plaintiff's Amended Complaint be granted, and that the Court award such other and further relief as justice and this cause may require.

Respectfully submitted,

_____/s/_____
Tessa Laspia Frederick (#465519)
Jessica A. duHoffmann (#476383)
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore, Maryland  21202
(410) 727-6464
Counsel for Defendant, Bank of America, N.A.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, pursuant to LCvR 5.4 that on the 5th day of January 2007, Counsel for Plaintiff, Donald Temple, Esquire, should receive electronic notice of the filing the foregoing **Motion for Summary Judgment** at <u>TemplePC@aol.com</u>, which e-mail address has been designated by Plaintiff's counsel to receive notices of electronic filings in this case.

_____/s/_____
Tessa Laspia Frederick (#465519)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GEORGE BANKS,                          *

      Plaintiff,                        *

v.                                     *    Case No. 05-CV-01688-HHK

BANK OF AMERICA, N.A.,                 *

      Defendant.                        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Bank of America, N.A. ("Defendant" or the "Bank"), by and through its undersigned attorneys, and pursuant to Federal Rule of Civil Procedure 56 and the Local Rules of this Court, hereby files this Memorandum in Support of the Bank's Motion for Summary Judgment and states as follows:

## I.    <u>INTRODUCTION</u>

On June 15, 2005, Plaintiff, George Banks ("Plaintiff") filed this action against the Bank in the Superior Court for the District of Columbia, which the Bank then removed to this Court on August 24, 2005.  In his Amended Complaint, Plaintiff alleges that he maintains business bank accounts at Bank of America and, on June 15, 2002, he attempted to engage in a business transaction involving those accounts at a Bank branch in Washington, D.C.  Plaintiff alleges that a teller at the Bank "refused to complete [Plaintiff's] transaction stating that 'Plaintiff did not look like he owned the business.'"

Plaintiff further alleges that an off-duty police officer in the Bank at that time arrested him for disorderly conduct.  Plaintiff alleges that he was injured during his arrest at the Bank and demands $2,000,000 in compensatory and punitive damages from the Bank.  Plaintiff has pled

four causes of action against the Bank arising out of this incident: negligence; gross negligence; negligent training and supervision and a violation of § 1981 of Title 42 of the U.S. Code.

Plaintiff's causes of action for negligence, gross negligence and negligent training and supervision all are based upon Plaintiff's conclusory statement that the Bank "violated its policies, customs, and practices and further violated Plaintiff's rights as a Bank customer."  Am. Compl., ¶¶ 25, 32, 34[1].  Plaintiff also alleges that the Bank had a duty to provide Plaintiff customer service as provided in the Bank's policies and procedures, and that the Bank breached those policies and procedures by refusing to process Plaintiff's transaction and dismissing Plaintiff from the Bank.  *Id.*

In Plaintiff's claim alleging a violation of 42 U.S.C. §1981, Plaintiff merely alleges that Defendant "interfered with his contract rights and benefits by imposing a different and greater standard upon him as a depositor than that imposed upon other non African-Americans."  *Id., ¶ 20.*  Plaintiff fails, however, to allege any actual facts establishing that the Bank demonstrated a racially discriminatory purpose in its actions or inactions relative to processing his business transaction.

Discovery in this matter closed on December 1, 2006.  Based upon Plaintiff's pleadings, discovery responses and his sworn testimony, Plaintiff fails to state any claim upon which relief could be granted by this court.  Specifically, Plaintiff completely fails to prove several elements essential to each of his causes of action.  Accordingly, and for those reasons set forth further below, Defendant respectfully moves for summary judgment all claims alleged in Plaintiff's Amended Complaint.

---

[1] The Amended Complaint is misnumbered and ¶ 34 appears in Counts III and IV.  Defendant is referring to ¶ 32 in Count III and ¶ 34 in Count IV.

## II.    UNDISPUTED FACTS

Plaintiff entered a Bank branch in Washington, D.C. on June 15, 2002 to conduct a business transaction.  He was withdrawing $1,000 from one account, transferring $700 of those funds to another account and intended to pocket $300 of the remaining funds.  Pl.'s Ans. to Interrog., No. 16, relevant portions of which are attached hereto as **Exhibit A** and are incorporated herein by reference.  The Plaintiff was asked to show the appropriate identification for the transaction, which he claims to have done.  _Id._  When the Bank teller refused to process his transaction due to Bank policy, the Bank manager intervened and tried to assist Plaintiff.  _Id._  An off-duty D.C. Metropolitan Police officer, who was at the Bank waiting in line to conduct a transaction, also intervened and eventually took it upon himself to arrest Plaintiff, have him transported to the police station where Plaintiff was charged with disorderly conduct.  _Id._

## III.    PLAINTIFF'S FACTUAL ALLEGATIONS

For purposes of this Motion only, Defendant accepts the facts plead in the Complaint and as alleged by Plaintiff in discovery as true.  Although Defendant disputes some of the facts as alleged by Plaintiff, such facts are either immaterial to the case and/or are insufficient to prove any element of a valid claim against Defendant, thus necessitating summary judgment due to Plaintiff's failure to state any claim upon which relief can be granted.  A recitation of these facts is helpful to demonstrate the complete and utter lack of evidence to support any of Plaintiff's claims and that those claims are based upon conclusory allegations and mere speculation.

In his Interrogatory responses in this case, Plaintiff explains the incident as follows:

> On June 15, 2002, I went to Bank of America at 1835 Columbia Road NW to conduct a business transaction.  I was withdrawing $1,000.00 from one of my accounts and transferring $700.00 of that $1000.00 to another account and keeping the remaining $300.00.  The teller processed my request and was about to give the amount that I requested, when another teller told her not to complete my transaction.  I inquired why.  She then replied that she would have to check and verify that I owned the business.  The second teller said that I did not look like I owned the business, even though I produced two forms of identification.

3

<u>Mr. Jordan [a branch manager] alleged that I provided only one form of identification to the teller.</u>  At this point, an off duty Metropolitan Police Officer Johnny Tubbs ("Tubbs") approached me with pepper spray and pointed it at me.  <u>Officer Tubbs asked Mr. German Jordan ("Jordan"), the bank manager, if he should throw me out of the bank.  Mr. Jordan said no and that he would resolve this matter.</u>  Mr. Jordan asked me to go and sit by his desk while he resolved the issue.  I then proceeded to Mr. Jordan's desk.

As Mr. Jordan and I spoke, Officer Tubbs interrupted and told me that if I spoke again, he would handcuff me.  I told him that I was conducting my business.  <u>Officer Tubbs told Mr. Jordan that it was now out of the hands of the bank and that this was now a Metropolitan Police Department matter.</u>  Mr. Jordan told Officer Tubbs that the Bank could handle the situation.  Mr. Jordan then turned to the Bank's Special Police Officer ("SPO") Winfred Wrice, and said "get him out of the Bank."

<u>Officer Tubbs then placed me in handcuffs and he double locked the handcuffs.  Officer Tubbs dragged me by the handcuffs out of the bank, while holding the handcuffs up in the air.  I was bent over because Officer Tubbs was holding the handcuffs up while he was dragging me out of the bank backwards approximately 100 feet.  Officer Tubbs over tightened the handcuffs.  Officer Tubbs told the special police officer to call Third District, so I could be transported to the Third District police department.</u>  I was arrested for disorderly conduct and transported to the Third District even though I did not do anything wrong.

**Exhibit A,** Answer No. 16.

At his deposition in November 2003 in a related case against the D.C. Metropolitan

Police Department for the same incident, Plaintiff elaborated on his allegations:

Q.    . . . So, why did you go into the bank?  What were you trying to accomplish?

A.    I went into the bank to transact business. . . .So, I went there to transfer money from one account to the other account.

<u>See</u> Pl.'s Deposition dated Nov. 6, 2003, relevant portions of which are attached hereto as

**Exhibit B** and are incorporated herein by reference, p. 21.

* * *

Q.    Okay.  So, you filled out the withdrawal slip, and what did you do with it?

A.    I gave it to the lady.  I gave it to her with my driver's license.

* * *

4

A.      And, she looked at it and she asked me for another ID.

\* \* \*

A.      I took my private detective license ID, which I have -- it's listed there -- and gave it to her.

Q.      . . . And then what happened?

A.      And she processed the transaction and handed me the documents, you know.  She processed it.  She was getting ready to hand me the money.

Q.      And then what happened?

A.      A lady came from the back of the tellers and said, he doesn't look like he owns the

business.

Exh. B, pp. 23-24.

\* \* \*

Q.      What further interaction did you have with the teller or tellers did you have after this Hispanic woman intervened? [2]

A.      No further.  I stood there where I was standing and I was waiting.  I made a statement that is there a special people that own this type of business.  I made that statement, and she said they already had my ID to check and see the transaction.  So, I was waiting right there by the teller for my money.

Q.      And, you weren't speaking?

A.      Not at that point.

Q.      All right.  Then what happened?

A.      When I made this statement that if there are certain people that own this type of business, that's when this off-duty police officer came to me on top of my head and held a tear gas on my head saying that.

---

[2] As is discussed below, Plaintiff alleged in his original complaint that female Bank teller who intervened was "Caucasian", but testified during his deposition in a related case in November 2003 that she was Hispanic.  He then testified in his deposition in this case on July 17, 2004, that she was "Caucasian".  See Pl.'s Deposition dated July 2006, p. 33; pertinent portions of which are attached hereto as **Exhibit D**, which are incorporated herein by reference.  The depositions taken in this case confirmed, however, that none of the Bank employees involved in the incident were Caucasian.  The deposition of Valentia Elebesunu, the intervening teller whom allegedly made the statement to Plaintiff that he "did not look like he owned the business," not only clearly appeared to be so at deposition, but also confirmed that she is neither Caucasian, nor Hispanic, but is African and from Nigeria.  *See* Depo. of Ms. Elebesunu, pp. 5-6, 65; pertinent portions of which are attached hereto as **Exhibit E** and are incorporated herein by reference.  Plaintiff is also African. S*ee* Exh. B, p. 5 (Mr. Banks testified to being from Liberia)).  In addition, despite that Plaintiff testified that the manager involved in the incident was "Caucasian", German Jordan is not Caucasian, but is from Bolivia.  *See* Depo. of Mr. Jordan, p. 7; pertinent portions of which are attached hereto as **Exhibit F**; *see also*, Exh. D, p. 40.  Finally, the teller initially involved in the transaction, Roxanna Fuentes, is Hispanic.  Exh. E, p. 65.

* * *

Q.     And how did he put this pepper spray in your face?

A.     He had it on top of my head and asking the bank if he should take me out of the bank.

Q.     . . . Asking who?

A.     Asking the tellers.  He rushed—I don't know where he came from, but all of the sudden he was on top of my head asking the people if he could take me out of the bank.

Q.     And did he [the officer] use [the spray]?

A.     <u>No.  Because the [bank] Manager walked in right away and came in from where he was sitting and said, leave him alone; we will handle it.  This is a bank issue and, Mr. Banks, go sit down to my desk.</u>

Q.     Okay.  And then what did you do?

A.     I walked over to the Manager's desk and sat under the chair.

Q.     And where was Officer Tubbs [the off-duty officer] at that point?

A.     He moved further a little bit, and he was standing not too far from me.  He said, if you say one more word, I will handcuff you, and you will be under arrest.

Q.     Did the Bank Manager ask you to leave the bank?

A.     Not at all.  He told me to go sit down at his desk so he could inquire from the tellers what happened.

* * *

Q.     And did you hear what the tellers said?

A.     I was sitting at his desk, which was far away from the tellers.

* * *

Q.     Okay.  Did anyone ever ask you to calm down?

A.     <u>The only person that was on me constantly was the off-duty police officer.</u>

* * *

Q.     . . . And no one asked you to leave the bank?

A.     <u>No one, to my knowledge, asked me to leave the bank.</u>

Q.     Now, did you ever have any interaction with a [bank] security guard?

A.     I did.

Q.     And could you describe the nature of that interaction?

A.     The only time I saw the security guard was when the off-duty police officer was trying to handcuff me.  [The off-duty police officer] came and he made a statement, if you say one more word, I will arrest you and handcuff you.  And that's when I said, I haven't done nothing wrong.  I'm a customer of the bank.  There's nothing that I've done.  [The off-duty police officer] said, we are going to handcuff you.  You are under arrest.  He held me up.  That's when

6

he told the security guard—because the security guard was coming toward the scene.  That's when he told the security guard to call the police.

* * *

Q.      And then [the off-duty police officer] did handcuff you?

A.      He did.

* * *

Q.      . . . Now, what were you saying during this time, if anything?

A.      I was saying, I haven't done nothing.  I came here to transact business.  Why should I be treated this way.  And the Bank Manager was also.

Q.      The Bank Manager what?

A.      Telling [the off-duty police officer] to stop.

* * *

Q.      <u>Did the [Bank] security guard ever ask you to leave the bank</u>?**3**

A.      <u>Not at all</u>.

Q.      Did the security guard ever say anything to you?

A.      Yes, he said something.

Q.      And what did he say?

A.      <u>He came to help the off-duty police officer to handcuff me, and by then, the off-duty police already had the handcuffs on me</u>.

Q.      Well, what did he say to you?

A.      That he was calling the police to come and pick me up.

Q.      Okay.

A.      Because the off-duty police had told them to call the police.

Q.      Okay.  What happened after you were handcuffed?

A.      I was dragged out of the bank [by the off-duty police officer].

* * *

Q.      Was there anyone out there with you, besides Officer Tubbs?

A.      Nobody.

Q.      The store security manager wasn't out there—I mean—excuse me—the store security guard wasn't out there?

A.      He wasn't out there.

Exh. B, pp. 28-40 (emphasis supplied).

---

[3] As discussed *infra*, the security guard is not an employee of Bank of America; rather, they are independent contractors.  (*See* Exh. G, p. 26).

In spite of the foregoing alleged incident, as recounted by Plaintiff under oath, the Amended Complaint alleges that the Bank treated Plaintiff differently based upon his race and was otherwise negligent.  As set forth above, Plaintiff's claims sounding in negligence are based upon Plaintiff's allegation that the Bank had a duty to provide Plaintiff customer service as provided in undefined and unidentified Bank policies and procedures, and that the Bank breached those policies and procedures by refusing to process Plaintiff's transaction and dismissing Plaintiff from the Bank.  (Am. Compl., ¶¶ 25, 31-32, 34-36).[4]  However, Plaintiff fails to identify the policy or procedure that forms the basis or underlying duty of Plaintiff's claims sounding in negligence.

In Plaintiff's § 1981 claim, he summarily alleges, without providing actual facts, that Defendant "interfered with his contract rights and benefits by imposing a different and greater standard upon him . . . than that imposed upon other non African-Americans."  (Am. Compl., ¶ 20).  Plaintiff fails, however, to allege any facts establishing that the Bank demonstrated a racially discriminatory purpose in its actions or inactions relative to processing his business transaction.  With discovery closed, Plaintiff has no evidence to support the conclusory allegations made in the Amended Complaint.

For example, in response to the Bank's discovery request seeking specific information regarding the factual and legal basis for his foregoing claims, Plaintiff responded as follows:

> Interrogatory No. 25.  Explain the factual and legal basis of your contention . . .of the Complaint that the Bank was ***negligent***.
>
> Answer:  The Bank breached their policies of serving and protecting Plaintiff as a customer.  Bank of America's manager failed to supervise the Bank staff and to provide equal and proper treatment to the Plaintiff.  Plaintiff despite complying fully with the teller's demand to see two forms of identification, was unlawfully arrested and his transactions were refused.  The Bank Manager, instead of

---

[4] Of course, Plaintiff's allegation that Bank employees dismissed him from the Bank conflicts with his sworn deposition testimony above wherein he testified that no one from Bank of America asked him to leave; rather, Officer Tubbs arrested him and made clear that it was official police business.  (Exh. B, 32, 37-38).

observing Bank of America's purported policies of customer service, summarily
dismissed Mr. Banks' concerns as evidenced by refusal to confer with Mr. Banks,
or review the transaction. The Bank Manager and Bank security, at the Manager's
order, breached the Bank's polices of serving and protecting the customer by
arresting, and the process injuring Mr. Banks who posed no treat whatsoever to
the Bank's security, and was, in fact, a highly valuable and loyal customer.

(Exh. A, Ans. Interrog. 25).

Interrogatory No. 30: Explain the factual and legal basis of your allegations of
**gross negligence** and **negligent supervision and training** alleged by you in your
Amended Complaint.

Response: The Bank of America policies and procedures regarding customer
service will provide the response to Interrogatory No. 30. Plaintiff is currently
awaiting receipt of these documents from Defendant. Additionally, the deposition
transcript record of the Bank Manager, German Jordan and bank tellers Valentina
Elebesunu and Roxanna Fuentes will also provide further factual basis. Also see
Count II, III, and IV of Plaintiff's Amended Complaint.

(Pl's Ans. to Def's Second Set Interrogs, No. 30; relevant portions of which are attached hereto as
**Exhibit C**).

Interrogatory No. 26: Explain the factual and legal basis of your contention in ...
the complaint that the Bank **violated 42 U.S.C. Section 1981**.

Answer: Plaintiff was treated differently on the basis of his race ad [sic] impeded
from the enjoyment of his contract as a customer-and specifically denied from
making withdrawals from his accounts.

(Exh. A, Ans. Interrog. 26).

With respect to his response to Interrogatory No. 30 regarding his gross negligence and

negligent supervision and training claims, it is notable that Plaintiff never served any written

discovery requests upon the Bank to obtain copies of such polices, and thus has never been able

to identify any Bank policies or procedures upon which Plaintiff relies for these claims.[5]

Furthermore, mere reference to deposition transcripts in his Answer to Interrogatory No. 30,

---

[5] Plaintiff's counsel apparently made verbal request for copies of certain Bank policies. Counsel for the Bank
recently agreed to produce those policies under a Stipulated Protective Order. However, Plaintiff's counsel failed to
file the Order and because the policies are considered confidential, the policies have not been produced. In any
event, Bank witnesses confirmed in deposition that they followed Bank policies and procedures with regard to
Plaintiff's transaction and it is Plaintiff's duty to prove otherwise.

without specific references to page numbers or a summary of what he believes the deponent said that supports Plaintiff's claims, is not an adequate response, nor is it evidence in support of Plaintiff's claims. To the contrary, the depositions make clear that the Bank required two forms of identification for Plaintiff to process his transaction, and the Bank disputes that Mr. Banks had two acceptable forms of identification to process his transaction. *See generally*, Exh. E, pp. 25-30; Exh. F, pp. 41-42; and Depo. of the bank teller, Roxanna Fuentes, pp. 32-38, relevant portions of which are attached hereto as **Exhibit G** and are incorporated herein by reference.

As set forth further below, Plaintiff has not uncovered any evidence sufficient to establish the existence of several elements necessary to prove each of his causes of action. With respect to his claims that sound in negligence, Plaintiff simply has failed to identify a duty or breach of any duty on the part of the Bank to support his claims. With respect to his § 1981 claim, Plaintiff has done nothing more than invoke his race in the course of his narrative, rather than establish 1) a prima facie case that the Bank demonstrated a racially discriminatory purpose in its actions and 2) a reasonable inference that the Bank's proffered explanation of the incident (to wit, Plaintiff failed to produce two acceptable forms of identification to process his transaction) is unworthy of any credence. Accordingly, for those reasons set forth further below, Defendant respectfully moves for summary judgment on Plaintiff's foregoing claims.

## III.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also, Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.C. 1995). To determine which facts are "material," a Court must look to the substantive law on

which each claims rests. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248. To be a genuine issue of fact, it must be supported by sufficient admissible evidence such that a reasonable trier of fact could find for the nonmovant. *See Laningham v. United States Navy*, 813 F.2d 1236, 1242-43 (D.C.C. 1987).

The moving party bears the initial burden of "identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *See Celotex*, 477 U.S. at 323- 24, *quoting*, Fed.R.Civ.P. 56(c)). To prevail on its motion for summary judgment, the movant must show that the nonmovant "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. In opposing summary judgment, the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the 'admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Id*. at 324.

The Court must view the facts in the light most favorable to the nonmovant, giving the nonmovant the benefit of all justifiable inferences derived from the evidence in the record. *Anderson*, 477 U.S. at 255 (1986). The nonmovant, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id*. at 252. However, it may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.C. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C.C. 1993). The nonmovant must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, *supra,* at 675. If

the evidence presented "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, *supra,* at 249-50.

Under Rule 56 of the Federal Rules of Civil Procedure, there can be no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990)(citations omitted).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. Moreover, the mere existence of a scintilla of evidence in support of plaintiff's position is insufficient to prevent the granting of summary judgment.  *Id*.

In the instant action, Plaintiff failed to make a showing sufficient to establish the existence of elements essential to that party's case.  *Celotex, supra*, at 322.  Rather, Plaintiff has relied solely on conclusory allegations of negligence and discrimination in this matter. Accordingly, as set forth below, Plaintiff cannot meet his burden.  *Greene, supra*, at 675

## IV.    ARGUMENT

### A.    Plaintiff has Failed to Establish Essential Elements of his Negligence and Gross Negligence Claims and Thus his Claims Fail as a Matter of Law.

To maintain an action in negligence, the plaintiff must allege and prove the following elements: (1) that the defendant was under a duty to the plaintiff; (2) that the defendant breached that duty; (3) that the plaintiff suffered actual injury or loss; and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.  *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633 (D.C. 2005), *cert. denied*, 126 S. Ct. 399, 163 L. Ed. 2d 277 (U.S. 2005), citing *District of Columbia v. Harris*, 770 A.2d 82, 87 (D.C.2001), *see* 65 C.J.S. Negligence § 21 (2000).

An action in negligence is not determined alone from the doing of an act resulting in injury to another.  Similarly, a defendant's breach of a duty, standing alone, does not mean that a defendant is negligent.  Only when these elements are brought together, do they constitute

negligence. The absence of any one of these elements renders the complaint bad or the evidence insufficient. *Id.*

A claim of gross negligence relies upon the same elements as ordinary negligence, except that the term "gross negligence" requires such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others. *District of Columbia v. Henderson*, 710 A.2d 874, 876 (D.C. 1998)(citations omitted). This standard has been held to connote that the defendant has engaged in conduct so extreme as to imply some sort of bad faith. *Id.* Where there is no evidence of subjective bad faith on the part of the actor, the extreme nature of the conduct may be shown by demonstrating that the actor acted in such disregard of a risk "so obvious that [the actor] must be taken to be aware of it and so great as to make it highly probable that harm would follow." *Id.* Stated otherwise, "[t]o be gross," negligence "should shock fair-minded men." *Piedmont Resolution, L.L.C. v. Johnston, Rivlin & Foley*, 999 F.Supp. 34, 58 (D.D.C. 1998), *citing*, *Krueger v. Taylor*, 37 F. Supp. 412, 413 (D.D.C. 1941). And, "stated in somewhat different terms, gross negligence is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety [or rights] of another." *Krueger,* 37 F. Supp. at 413 (citations omitted).

In the instant matter, Plaintiff cannot establish the essential elements of his ordinary negligence claim, let alone his gross negligence claim. Putting aside for the moment that Plaintiff has not and cannot establish that the Bank's alleged conduct is "an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others", Plaintiff has failed to allege a basic duty or breach to support his ordinary negligence claim.

13

Specifically, Plaintiff has merely alleged that 1) "Defendant's employees had a duty of care to provide Mr. Banks customer service as provided for in BOA's policies and procedures" and 2) "[b]y refusing to process Mr. Banks's transactions, Plaintiff breached its duty of care of customer service, violated its policies, customs, practices and further violated Plaintiff's rights as a Bank customer." (Am. Compl., ¶¶ 24-25; 31-32). Plaintiff then concludes that he has been damaged to the sum of $2,000,000.

Plaintiff, however, fails to identify the duty or identify what Bank "policies or procedures" create a duty to Plaintiff. Further, when pressed for the factual and legal basis for his negligence claims, Plaintiff simply makes the conclusory statement that "the Bank breached their policies of serving and protecting Plaintiff as a customer" and he was injured as a result. (Exh. A., Ans. Interrog. No. 25; *see also*, Exh. C, Ans. Interrog. No. 30).

Notably, as set forth above, Plaintiff has never served the Bank with written discovery requests so he does not have and has been unable to identify the Bank "policies and procedures" that allegedly form the basis of the Bank's "duty."[6] Rather, Plaintiff has done nothing more than allege that there is some undefined "duty" outlined in the Bank's policies and procedures, that the Bank breached that duty by failing to follow its policies and procedures, and that Plaintiff is legally entitled to recover for the Bank's failure to follow those undefined policies and procedures. Without more, Plaintiff has failed to establish the basic elements of a negligence claim.

Plaintiff may attempt to mask this fatal flaw to his claim by arguing that there is a material fact in issue as to whether he produced two forms of identification to the teller to process his transaction so as to avoid summary judgment on his negligence claims. Based upon

---

[6] See Footnote 5. Discovery is over and Plaintiff's has failed to file the Stipulated Protective Order to obtain copies of certain Bank policies which the Bank, in the spirit of cooperation, but with a written discovery request, agreed to provide.

the deposition transcripts of the Bank employees, which Plaintiff references as support for his claims (Exh. C, Ans. Interrog. 30), Mr. Banks was required to produce two forms of acceptable identification to process his transaction, and it is disputed in this case whether Plaintiff produced two forms of acceptable identification to the tellers before the off-duty police officer, whom is not related to the Bank, intervened. *See generally*, Exh. E, pp. 25-30; Exh. F, pp. 41-42; Exh. G, pp. 32-38.

Whether the Bank found Plaintiff's identification sufficient to process his transaction, however, does not create a material fact sufficient to cure the defect in his negligence claims. This dispute regarding the sufficiency of his identification does not identify a "duty" or "breach" on the part of the Bank.  Specifically, this dispute over whether Plaintiff produced two forms of identification does not identify any policy or procedure that requires Defendant to process a transaction regardless of whether its teller finds the identification (whether one form or two) acceptable.  Stated another way, Plaintiff has not identified any policy or procedure that holds the Bank liable to a customer for a teller's determination that Plaintiff's identification produced was unacceptable to process his transaction.  Accordingly, such a dispute is immaterial in that it does not cure Plaintiff's failure to identify a cognizable duty on the part of the Bank under its' polices (or otherwise) or a breach thereof.

What is more, even assuming, *arguendo*, that Plaintiff were able to identify a policy or procedure that was breached by a Bank employee, the Bank's liability would have to be related to the teller's decision not to process his $1000 transaction.  In this case, however, Plaintiff's damages of "mental anguish, including but not limited to physical injury, embarrassment, humiliation, fear, loss of liberty, loss of self-esteem, and loss of reputation" are clearly related to his arrest by a District of Columbia police officer and not the tellers' decision that his

identification was insufficient to process his transaction.  Am. Compl., ¶¶ 28, 35; Exh. A, Ans. to Interrog., No. 16; *see also*, Exh. B, pp. 28-40.

A teller's decision that his identification was insufficient (whether right or wrong) is not forseeably related to the decision of an off-duty police officer to arrest Plaintiff for his conduct in the Bank branch.  Furthermore, Plaintiff's Interrogatories clearly state that Officer Tubbs, the off-duty police officer, made clear that his actions were outside the Bank's domain and that his actions were official police business.[7]  (Exh. A, Ans. to Interrog., No. 16).  Plaintiff further made clear in his deposition in November 2003 that the Bank, through its manager attempted to help Plaintiff with his transaction and told the off-duty officer to "stop" arresting Plaintiff.  In addition, Plaintiff admitted that no one at the Bank ever told him to leave the premises.  (Exh. B, pp. 28-40).  Accordingly, Plaintiff cannot establish just how the Bank is liable for damages stemming from Plaintiff's arrest by the D.C. police.

Similarly, while not clear by the manner in which Plaintiff has set forth his claims, to the extent that Plaintiff is attempting to hold the Bank liable under a *respondeat superior* theory for the undefined actions on the part of the Bank security guard in the incident, Plaintiff's claims in this regard also must fail.   As set forth above, the security guard was not a Bank employee but was an independent contractor. (Exh. G, p. 26).  Accordingly, the Bank can be held vicariously liable for his conduct only if the Plaintiff establishes a master-servant relationship between the Bank and security guard. *See Safeway Stores, Inc. v. Kelly*, 448 A.2d 856, 860-861 (D.C.1982).  Plaintiff has failed to establish such a relationship.

Indeed, to establish that a master-servant relationship exists, while no single factor is controlling, "the decisive test ... is whether the employer has the right to control and direct the servant in the performance of his work and the manner in which the work is to be done." *Id.* at

---

[7] Officer Tubbs was at the Bank on the date of the incident as a Bank customer who was waiting in line to be served. Exh. F, p. 24-25.

860.  Plaintiff has not established any proof demonstrating that the Bank had the right to control the security guard's conduct, especially since he has not propounded any discovery to the Bank on this matter.

Plaintiff testified in his November 2003 deposition that the security guard did not handcuff Plaintiff, did not tell him to leave the Bank, and only telephoned the police at the Officer Tubb's direction.  (Exh. B, pp. 37-39).  Under *Kelly* and other cases, these allegations do not demonstrate the kind of control sufficient to establish a master-servant relationship upon which liability on the Bank may be founded.  *See Kelly, supra*, at 860-861; *see also, e.g*., *Brown v. Argenbright Sec., Inc*. 782 A.2d 752, 759 (D.C. 2001); *District of Columbia v. Hampton*, 666 A.2d 30, 38- 41 (D.C. 1995); *Giles v. Shell Oil Corp.,* 487 A.2d 610, 611-613 (D.C. 1985). Accordingly, since Plaintiff cannot establish a master-servant relationship, to the extent that Plaintiff is making a *respondeat superior* claim regarding the security officer's conduct, the Bank has no liability to Plaintiff as a matter of law.

Finally, putting aside Plaintiff's failure to establish a cognizable duty or breach to support his ordinary negligence claims, with regard to his gross negligence claim, Plaintiff has failed to allege any conduct or facts to support his conclusion that the Bank acted in a manner that was an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others.  *District of Columbia v. Henderson*, 710 A.2d 874, 876 (D.C. 1998)(citations omitted).  Plaintiff has simply concluded that the Bank's failure to process his transaction and failure to abide by its policies and procedures was grossly negligent.  *See generally*, Am. Compl., pp. 4-5; Exh. A, Ans. to Interrog. No. 30).  Absent actual facts demonstrating such gross negligence, Plaintiff's claim for gross negligence must fail as a matter of law.

For these reasons, Defendant respectfully requests that judgment be entered on its behalf on Plaintiff's negligence and gross negligence claims.

**B.    Plaintiff Failed to Establish Essential Elements of his Negligent Supervision And Training Claim and Thus his Claims Fail as a Matter of Law.**

Similarly, Plaintiff has failed, for much the same reasons, to establish necessary elements of his negligent supervision and training claim.  An action for negligent supervision requires proof that the employer breached a duty to plaintiff to use reasonable care in the supervision or training of an employee which proximately caused harm to plaintiff.  *Phelan v. City of Mount Rainier*, 805 A.2d 930, 940 (D.C. 2002)(citations omitted).  To invoke liability for negligent supervision and training under District of Columbia law, it is incumbent upon a party to show that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee.  *Kivanc v. Ramsey*, 407 F.Supp.2d 270, 274 (D.D.C. 2006)(citations omitted).  Plaintiff must also aver, and ultimately prove, that the defendant's failings were substantial factors in bringing about the harm complained of.  *Id*.

In the instant action, Plaintiff has alleged that the Bank failed to follow its policies and procedures and further failed to properly "train, supervise, control, direct and monitor its tellers in their duties and responsibilities."  Am. Compl., ¶¶ 32-33.  When asked to identify the legal and factual bases of his claim in a discovery request, Plaintiff responded that they are contained in Bank policies and procedures, copies of which he does not have.  Exh. C, Ans. to Interrog. No. 30.  Without more, Plaintiff has failed to establish just how the Bank breached a duty to Plaintiff in supervising or training its employees.  *Phelan, supra,* 940.

Plaintiff further has failed to establish that the Bank knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the Bank, armed with that actual or constructive knowledge, failed to adequately supervise the employees.

18

*Kivanc, supra,* at 274. Indeed, Plaintiff has failed to identify the dangerous or otherwise incompetent behavior on the part of its employees. Rather, as set forth above, Plaintiff has simply concluded that the employees violated unidentified Bank policies and procedures by determining that his identification was insufficient and refusing to process his transaction.[8]

Plaintiff also has failed to establish just how the Bank's failings in relation to training and supervising its employees were substantial factors in bringing about the harm of which he complains. *Id.* As set forth above, Plaintiff's claims are related to the tellers refusing to process Plaintiff's transaction and finding that his identification was insufficient. Not only has Plaintiff failed to connect how this conduct forseeably relates to his arrest by Officer Tubbs (the root of his damages claim), but he further has failed prove or otherwise present evidence demonstrating how exactly the tellers were improperly trained or supervised and how this failure was a substantial factor in Plaintiff being arrested. Indeed, Plaintiff's entire cause of action for negligent supervision and training is based upon nothing more than complete speculation and unsupported legal conclusions.

For these reasons, Defendant, Bank of America respectfully requests that judgment be entered as a matter of law in its favor on Plaintiff's claim of negligent supervision and training.

**B.      Plaintiff's Section 1981 Claim is Based upon Pure Speculation and Thus his Claim Fails as a Matter of Law.**

Finally, Plaintiff cannot meet his burden of prove with respect to his § 1981 claim of discrimination. Section 1981 prohibits racial discrimination in the making and the enforcement

---

[8] Plaintiff further alleges relative to his negligent supervision and training claim that the Bank manager also improperly requested that Plaintiff leave the Bank. (Am. Compl., ¶ 36). Of course, this allegation is directly contrary to Plaintiff's sworn deposition testimony set forth above in which Plaintiff acknowledges that the manager never requested that Plaintiff leave the bank, and that, indeed, the manager attempted to assist the Plaintiff and told the police officer to stop arresting him and "leave him alone." (Exh. B, pp. 30-31, 37).

of private contracts.[9]  *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.C.C. 1990), *citing*, *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989).[10]  To pursue a cause of action under § 1981, a plaintiff cannot merely invoke his race in the course of a narrative and automatically be entitled to pursue relief.  *Id.*, *citing, Jaffe v. Federal Reserve Bank of Chicago*, 586 F. Supp. 106, 109 (N.D.Ill. 1984).  Rather, plaintiff must allege some facts that demonstrate that his race was the reason for defendant's actions. *Id., citing, Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir.1982).

Summary judgment motions in § 1981 cases are governed by the burden shifting provisions established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255-56, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207 (1981).  *See Patterson*, 491 U.S. at 186, 109 S.Ct. at 2378.

Under the *McDonnell Douglas* test, a plaintiff has the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination.  *Patterson*, 491 U.S. at 186, 109 S.Ct. at 2378.  Once a plaintiff has proven the elements of a prima facie case, the burden of production shifts to defendant to articulate, though not necessarily prove, a legitimate, nondiscriminatory reason for the challenged action.  *See McDonnell Douglas*, 411 U.S. at 802-03, 93 S.Ct. at 1824.  If defendant articulates a proper basis for its conduct, the burden shifts

---

[9] Section 1981 reads, in pertinent part:
Equal rights under the law    (a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
[10] In its 1989 *Patterson* decision, the Supreme Court held that the "right to make contracts" language in § 1981 did not apply to conduct occurring after a contract is formed, including a party's refusal to perform a specific contract term. As part of the Civil Rights Act of 1991,[FN14] Congress amended § 1981 to provide that the "make and enforce contracts" clause includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.  42 U.S.C. § 1981(b).

back to plaintiff in the third stage of the analysis to prove that defendant's proffered reasons were simply a pretext "for discrimination." *Id.*, 411 U.S. at 804-05, 93 S.Ct. at 1825.

"The law is clear, however, that suspicion, perception, opinion and belief [of discrimination] cannot be used to defeat a motion for summary judgment. *Laroche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999), *citing, Local No. 48, United Bhd. of Carpenters & Joiners v. United Bhd. of Carpenters & Joiners*, 920 F.2d 1047 (1st Cir. 1990). "The nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Jackson v. Tyler's Dad's Place, Inc.*, 850 F. Supp. 53, 55 (D.D.C. 1994), *citing, Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

In short, to establish a violation of section 1981, a plaintiff must do more than simply invoke his race in the course of a narrative to automatically be entitled to pursue relief. Bray, 748 F.Supp. at 5. "To establish a prima facie case under § 1981, the plaintiff must demonstrate a racially discriminatory purpose." *Brown v. District of Columbia*, 251 F.Supp.2d 152, 163 (D.D.C. 2003). "To defeat even summary judgment, plaintiffs must allege some facts 'establishing a reasonable inference that the defendant's proffered explanation [for not contracting with plaintiff] is unworthy of credence.'" *Clifton Terrace Assoc. v. United Techs. Coop.*, 929 F.2d 714, 722 (D.C. Cir. 1991); *see also*, *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982) (plaintiffs must allege some facts demonstrating that race was the reason behind defendant's actions).

In this case, *sub judice*, Plaintiff has merely alleged that "Defendant interfered with the enjoyment of his contract rights and benefits, as well as his rights as a customer, by imposing a different and greater standard upon him as a depositor than that imposed upon other non-Black Americans." Am. Compl., ¶ 20. When asked to provide a factual basis for his claim in discovery, Plaintiff's response was that "Plaintiff was treated differently on the basis of race and

impeded from the enjoyment of his contract as a customer-and specifically denied from making withdrawals from his accounts." Exh. A, Ans. to Interrog. No. 26. Further, from the sworn rendition of the incident in his Answer to Interrogatory No. 16 (Exh. A), Plaintiff's conclusory statements are based upon the Bank's decisions that Plaintiff's identification was insufficient as a matter of bank policy to process his transaction and an employee's alleged statement that that the Plaintiff "did not look like he owned the business." *Id.*

Without more, these factual allegations do not establish a violation of §1981. Rather, Plaintiff has simply invoked his race in the course of his narrative in an attempt to create a discrimination claim. *Bray*, 748 F.Supp. at 5. As set forth above, to establish a prima facie case under § 1981, the plaintiff must demonstrate a racially discriminatory purpose for the Bank's actions. *Brown v. District of Columbia*, 251 F.Supp.2d at 163. Here, Plaintiff has not established that the Bank, through its teller, Ms. Elebesunu, acted with a racially discriminatory purpose in refusing to process Plaintiff's transaction.

Indeed, putting aside the notable fact that Ms. Elebesunu is the same race as Mr. Banks, they are both African (born in Africa and moved to the United States), it is undisputed that Ms. Elebesunu refused to process his transaction because she found Plaintiff's identification to be insufficient as a matter of bank policy. (Exh. A, Ans. Interrog. No. 16; Exh. B, pp. 28-40; Exh. E, pp. 25-30; Exh. F, pp. 41-42; Exh. G, pp. 32-38). Mr. Bank's entire case is largely based upon his allegation that this decision was incorrect under the Bank policies. The evidence in the case demonstrates that the tellers did follow Bank policy. *Id.* In any event, whether or not Ms. Elebesunu's decision was correct as it relates to the bank policies does not establish a § 1981 claim. To the contrary, it establishes that Ms. Elebesunu acted with a non-discriminatory purpose in refusing to process his transaction; to wit: she believed (right or wrong) that his identification was insufficient.

As for Plaintiff's allegation that Ms. Elebesunu stated that Plaintiff did not look like he owned the business, this alone does not create a discriminatory purpose behind Ms. Elebesunu's conduct in refusing to process Plaintiff's transaction because she found it insufficient as a matter of policy. First, it is undisputed that Ms. Elebesunu is the same race as Plaintiff. Second, such a statement is not racially charged on its face. Assuming *arguendo* that Ms. Elebesunu made this statement, which she disputes, there are factors other than race that could create a belief that Plaintiff did not look like he owned the business. For instance, such a statement could have been based upon Plaintiff's attitude, his demeanor, whether Ms. Elebesunu thought she knew the owner of the business, et cetera. In short, there has been no evidence that this alleged statement was made with a racially discriminatory motive or that Bank policies and procedures for the processing of Plaintiff's transaction were in any way discriminatory. Indeed, both the Plaintiff and the Bank employee, Ms. Elebesunu, who is alleged to have made the statement, are African.

As set forth above, to defeat even summary judgment, Plaintiff must allege some facts "establishing a reasonable inference" that the Bank's proffered explanation for not processing Plaintiff's transaction, to wit, he failed to produce sufficient identification, is not worthy of credence. *Clifton Terrace Assoc. v. United Techs. Coop.*, 929 F.2d 714, 722 (D.C. Cir. 1991); *see also*, *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982). Plaintiff cannot establish this as a matter of law. Indeed, Plaintiff's entire claim is based upon nothing more than speculation that Ms. Elebesunu's determination that Plaintiff's identification was insufficient was incorrect under Bank policy. Since mere speculation cannot support a § 1981 claim, judgment must be entered in favor of the Bank. *See Laroche v. Denny's, Inc*., 62 F. Supp. 2d at 1371.

## IV.    CONCLUSION

For the foregoing reasons, Bank of America, N.A. respectfully requests that this Court enter an Order granting its Motion for Summary Judgment and entering judgment as a matter of law in its behalf as to all claims contained in Plaintiff's Amended Complaint.

Respectfully submitted,

_____/s/_____
Tessa Laspia Frederick (#465519)
Jessica A. duHoffmann (#476383)
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore, Maryland  21202
(410) 727-6464

Counsel for Defendant, Bank of America, N.A.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, pursuant to LCvR 5.4 that on the 5th day of January 2007, Counsel for Plaintiff, Donald Temple, Esquire, should receive electronic notice of the filing the foregoing **Memorandum in Support of Motion for Summary Judgment** at TemplePC@aol.com, which e-mail address has been designated by Plaintiff's counsel to receive notices of electronic filings in this case.

_____/s/_____
Tessa Laspia Frederick (#465519)

24