IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GEORGE BANKS, | * | |
| Plaintiff, | * | |
| v. | * | Case No. 05-CV-01688-HHK |
| BANK OF AMERICA, N.A., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ANY CONTRACT
OTHER THAN THE CONTRACT ASSOCIATED WITH THE
BUSINESS BANK ACCOUNTS AT ISSUE IN THIS CASE**

Defendant, Bank of America, N.A. ("BOA"), by and through its undersigned attorneys, and pursuant to this Court's Order of March 17, 2008 (paper no. 46), hereby files this Motion in Limine, and states as follows:

1.  For the reasons set forth in BOA's Memorandum in Support of this motion in limine, was filed contemporaneously herewith and is incorporated herein by reference, BOA moves in limine to bar Plaintiff from admitting any evidence of a contract between Plaintiff and BOA. The only "contract" relevant to this litigation and identified by the parties during discovery is the account agreements between BOA and the company for which Plaintiff acts as President and Chief Executive Officer; to wit: Sentry Security, Inc. ("SSI"). Any other evidence of any agreement (the existence of which denied), other than that between BOA and SSI, should be excluded from evidence because 1) Plaintiff failed to identify the same during the course of discovery, and 2) the existence of any other contract is not relevant to Plaintiff's claims or the facts of this case and would do nothing more than confuse the jury and the issues in this case.

2. In addition, because BOA's contract attendant with the business accounts are with the corporation, SSI, and not with Plaintiff, Plaintiff cannot maintain a claim under §1981 and judgment must be entered in favor of BOA as a matter of law.

WHEREFORE, for the forgoing reasons, Bank of America, N.A. respectfully requests that this Court enter an Order:

a) Granting Bank of America, N.A.'s Motion in Limine;

b) Precluding Plaintiff from admitting any evidence of any agreement Plaintiff and Bank of America, N.A.; and

c) Granting judgment in favor of Bank of America, N.A. as a matter of law.

Respectfully submitted,

/s/
Tessa Laspia Frederick (#465519)
Jessica A. duHoffmann (#476383)
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore, Maryland 21202
(410) 727-6464

Counsel for Defendant,
Bank of America, N.A.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, pursuant to Local Rule 5.4 that on the 20th day of March 2008, Counsel for Plaintiff, Donald Temple, Esquire, should receive electronic notice of the filing the foregoing *Memorandum in Support of Motion in Limine* at TemplePC@aol.com, which e-mail address has been designated by Plaintiff's counsel to receive notices of electronic filings in this case.

/s/
Tessa Laspia Frederick (#465519)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GEORGE BANKS, | * | |
| Plaintiff, | * | |
| v. | * | Case No. 05-CV-01688-HHK |
| BANK OF AMERICA, N.A., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
IN LIMINE TO EXCLUDE EVIDENCE OF ANY CONTRACT
OTHER THAN THE CONTRACT ASSOCIATED WITH THE
BUSINESS BANK ACCOUNTS AT ISSUE IN THIS CASE**

Defendant, Bank of America, N.A. ("Defendant" or "BOA"), by and through its undersigned attorneys, and pursuant to this Court's Order of March 17, 2008 (paper no. 46), hereby files this Memorandum in Support of Bank of America's motion in limine to exclude evidence of any contract other than the contract relating to the business bank accounts at issue in this case, and states as follows:

**I.      INTRODUCTION**

This case arises from an incident involving Plaintiff, George Banks ("Plaintiff") that occurred on June 15, 2002 at a Bank of America branch located at 1835 Columbia Road, NW, Washington, D.C. Plaintiff's only claim remaining against BOA is that it violated § 1981 of Title 42 of the United States Code by refusing to complete financial transactions involving two business bank accounts. Plaintiff alleges that BOA discriminated against him because of his race and "interfered with the enjoyment of his contract rights . . . by imposing a different and greater standard upon him as a depositor."

BOA moves in limine to exclude Plaintiff from offering any testimony or other evidence at trial of a contract between Plaintiff, in his individual capacity, and BOA. The only "contract" relevant to this litigation and identified by the parties during discovery pertains to the two business accounts and the Deposit Agreement that governs those accounts between BOA and the company for which Plaintiff acts as President and Chief Executive Officer; to wit: Sentry Security International, Inc. ("SSI"). Any evidence of another contract or agreement (the existence of which is denied), other than that between BOA and SSI, should be excluded from evidence because Plaintiff failed to identify any contract between himself, individually, and BOA during discovery and any such agreement is not relevant to this case in any event. It is undisputed that the two bank accounts involved in the transaction at issue in this case were the SSI business bank accounts.

Therefore, for the reasons set forth below, because its contract attendant with the SSI business accounts are with SSI, a corporation, and not with Plaintiff, judgment must be entered in favor of BOA as a matter of law.

## II. BACKGROUND AND FACTS IN SUPPORT OF MOTION

Plaintiff is the President and Chief Executive Officer of the District of Columbia corporation, SSI. At the time of the incident at issue in this case, SSI maintained two business accounts at BOA. *See* Memorandum Opinion and Order dated September 6, 2007, pp. 1-2; *see also, Banks v. Bank of America, N.A.*, 505 F.Supp.2d 159 (2007)(hereinafter, "Opinion"). On June 15, 2002, Plaintiff sought to withdraw $1,000 from one of SSI's corporate accounts, deposit $700 into a second SSI account, and keep the remaining $300 for himself. *Id.* at 2. Roxana Fuentes, a BOA bank teller, requested a second form of identification from Plaintiff, and there is a factual dispute between the parties as to whether Plaintiff produced the second form of

identification. Furthermore, while there is no dispute that the head teller, Valentina Elebesunu, intervened in the transaction and ultimately refused to process the transaction, there is a dispute as to the basis for the denial. Plaintiff alleges that Ms. Elebesunu stated that "he did not look like he owned the business" and that BOA's inability and ultimate refusal to process his bank transaction were racially motivated. Plaintiff was arrested for disorderly conduct by an off duty D.C. Metropolitan Police Officer who happened to be in the bank at that time. *See generally*, Opinion, pp. 1-4.

Notwithstanding the above disputed facts, Plaintiff's allegations relate to his undisputed attempt to transfer funds between two business accounts owned by SSI. At the time of the transaction, Plaintiff had prepared a "Counter Checking/Savings Withdrawal" slip in the amount of $1,000 for SSI account no. XXXXXX2903 and a preprinted SSI "Deposit Ticket" for SSI account number XXXXXX7118. *See* Copies of Transaction Documents, attached hereto as **Exhibit A**. It is undisputed that the accounts reflected on these documents are business accounts owned by SSI and are the accounts at issue in this case (the "Business Accounts").

Plaintiff, in his capacity as "President/CEO" of SSI, executed a Corporate Signature Card attendant with each Business Account. Each Signature Card provides, in pertinent part:

> By signing below, the above named Corporation agrees that this account is governed by the terms and conditions set forth in the following documents as amended from time to time: (1) the Deposit Agreement and Disclosures . . ..

True and correct copies of the Corporate Signature Cards for the Business Accounts are attached hereto as **Exhibit B**.[1] Plaintiff also executed Corporate Resolutions for the Business Accounts, attached hereto as **Exhibit D**. *See* Wimberly Affidavit, Exh. C, at ¶ 6. Based upon the foregoing

---

[1] The Corporate Signature Cards attached as Exhibit B are authenticated pursuant to Paragraph 5 of the attached Affidavit of Joy Wimberly. *See* Affidavit of Joy Wimberly, attached hereto as **Exhibit C** and incorporated herein by reference.

records, the Business Accounts are governed by the BOA Deposit Agreement in effect at the time of the incident (hereinafter, the "Deposit Agreement"). That Deposit Agreement forms the contract between BOA and SSI, and Plaintiff is not a party thereto in his individual capacity. A true and correct copy of the Deposit Agreement is attached hereto as **Exhibit E**.[2]

For the reasons set forth below, because Plaintiff has never identified any contract between BOA and Plaintiff, individually, he should be precluded from introducing any such evidence at trial. In any event, the existence of any such contract between the parties (which is disputed) would not be relevant to this litigation because all of the facts of which Plaintiff complains stem from the financial transactions involving SSI's Business Accounts.

Finally, Plaintiff's § 1981 claim cannot prevail without establishing a contract between the parties. As set forth above, Plaintiff alleges that BOA "interfered with his contract rights . . . by imposing a different and greater standard upon him as a depositor than that imposed upon other non African-Americans." However, the "contract" about which he complains is not his contract, and his allegations do not pertain to any personal accounts owned by him. Rather, it is the Deposit Agreement between BOA and SSI governing the handling of Plaintiff's financial transactions relative to the Business Accounts that is at issue. Thus, for those reasons set forth below, judgment must be entered in favor of BOA as a matter of law.

---

[2] The Deposit Agreement, which governs the Business Accounts, is authenticated pursuant to Paragraph 8 of the Wimberly Affidavit (Exh. C). This Deposit Agreement is applicable to all BOA accounts in Washington, D.C, and was in effect and applicable to the Business Accounts at issue in this case during the relevant time periods set forth in Plaintiff's Amended Complaint. *See* Exh. C, ¶ 8.

### III.  ARGUMENT

    A.  **Plaintiff Should Be Precluded From Introducing Into Evidence Any Contracts Between the Parties Because 1) Plaintiff Failed To Produce Evidence of the Same Prior to the Close of Discovery; 2) Any Such Contract is Irrelevant; and 3) Any Such Contract Will Confuse the Issues and Jury.**

        *1.  Plaintiff Failed to Produce Evidence of any Contract Between the Parties.*

Plaintiff's § 1981 claim is based upon his allegation that BOA "interfered with the enjoyment of his contract rights by imposing a different and greater standard upon him as a depositor" and arises from his attempt to transfer funds between the two Business Accounts owned by SSI. The only "contract" identified during the course of discovery and relevant to the issues in this case is the Deposit Agreement, as well as the related Corporate Resolutions and Signature Cards, between SSI and BOA governing those Business Accounts.

During discovery, Plaintiff has continually proffered that "the factual and legal basis" for his § 1981 claims, is that "he was treated differently on the basis of his race and impeded from the enjoyment of his contract as a customer – and specifically denied from making withdrawals from his accounts." *See e.g.*, Ans. Interrog., No. 26, pertinent portions of which are attached hereto as **Exhibit F**; *see also*, Opinion, discussing Plaintiff's deposition testimony. However, Plaintiff failed to identify or produce any contract between himself, individually, and BOA to support his § 1981 claim against BOA. *See e.g.*, Req. Prod. Doc. 11, pertinent portions of which are attached hereto as **Exhibit G**.

In short, Plaintiff has never mentioned, pled, nor produced any agreement between himself, individually, and BOA upon which he bases his § 1981 claim against BOA. Quite to the contrary, Plaintiff has repeated proffered that his claims arise out his contract rights relative to the two SSI Business Accounts. Accordingly, while BOA disputes and is unaware of the

existence of any agreement between Plaintiff and BOA, in an abundance of caution, and to the extent that Plaintiff now asserts that one exists, BOA moves in limine to exclude any evidence of the same.

To the extent that any such agreement exists, Plaintiff had a duty to produce the same under Rule 26(e) of the Federal Rules of Civil Procedure during discovery. Federal Rule 26(e) provides, in pertinent part:

> (e) Supplementing Disclosures and Responses. (1) *In General.* A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response.

*Id.* This Rule is designed to narrow the issues and eliminate surprise at trial. *See e.g., U.S. v. Philip Morris USA, Inc.*, 223 F.R.D. 1, 6 (D.D.C. 2004), citing, *Johnson v. H.K. Webster, Inc.*, 775 F.2d 1, 7 (C.A.1 (N.H.) 1985). Accordingly, the introduction of any contract not previously identified is a clear violation of Plaintiff's discovery obligations and creates unfair surprise to BOA.

### 2.     *Any Agreement Between Plaintiff And BOA Is Irrelevant.*

Because the issues and undisputed facts in this case clearly relate to the transfer of funds between the two SSI Business Accounts, only the Deposit Agreement between BOA and SSI governing those Business Accounts, as well as the attendant Signature Cards, is relevant. Any other agreement between BOA and Plaintiff would not be germane to the facts and issues in this case.

As set forth by this Court in *U.S. ex rel. El-Amin v. George Washington University*, 2008 WL 287983, *3 (D.D.C. Feb. 4, 2008).

> Rule 401 of the Federal Rules of Evidence defines relevant evidence as 'having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' 'The Advisory Committee

> Notes to [the] Rule ... explain that 'relevant evidence' permits the use of evidence that is admitted as an aid to understanding.' 'The basic concept is that an item of proof is relevant if it tends to prove or disprove any material issue of fact in a case.' Because the rule is 'silent as to what factors the court must consider in determining whether an item of evidence is relevant [,] ... [c]ourts cannot employ a precise, technical, legalistic test for relevance; instead, they must apply logical standards applicable in every day life.'

*Id.* (internal citations omitted).

Here, any contract between Plaintiff and BOA (the existence of which is denied by BOA) that does not relate to the transaction about which Plaintiff complains — a transaction governed by the SSI Business Account Deposit Agreement with BOA — is not relevant to the issues presented in this case. Plaintiff's entire § 1981 claim arises out of his attempt to transfer money between the two SSI Business Accounts and there is no dispute that no personal or individual bank account was involved in this case. Therefore, the only relevant contract is the Deposit Agreement between SSI and BOA governing SSI's Business Accounts.

### 3. *Introduction of An Agreement Between The Parties Will Confuse the Issues and Jury.*

Although BOA is unaware of any contract between it and Plaintiff because Plaintiff does not have any personal bank accounts with BOA, even assuming *arugendo* that an agreement between the parties does exist and is relevant, the Court should still preclude Plaintiff from introducing it at trial. Rule 403 of the Federal Rules of Evidence provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see also United States v. Rezaq,* 328 U.S. App. D.C. 297, 134 F.3d 1121, 1137 (D.C. Cir. 1998). Here, because none of Plaintiff's claims or allegations arise from any other agreement but the SSI

Business Account Deposit Agreement, any probative value that a contract between Plaintiff and BOA might have would be substantially outweighed by the danger of confusing the issues and jury in this case.

> **B.  Because Plaintiff Cannot Identify Injuries Flowing From a Racially Motivated Breach of any Personal Contract with BOA, and Plaintiff's Claims Clearly Arise from BOA's Contractual Relationship with SSI, Plaintiff's Claims Must Fail as a Matter of Law.**

Finally, and probably the most crucial piece to this Motion, is that because Plaintiff's § 1981 claim does not arise out of his <u>own, individual</u> contractual relationship with BOA, he cannot identify injuries flowing from a racially motivated breach of his own, individual contractual relationship with BOA, and his claims must fail as a matter of law.

Section 1981 prohibits racial discrimination in the making and the enforcement of private contracts. 42 U.S.C. § 1981. Section 1981 reads, in pertinent part:

> Equal rights under the law (a) Statement of equal rights: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(b).[3] *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.C.C. 1990), *citing, Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989).[4] A

---

[3] This case involves the "contracts clause" of § 1981. Nevertheless, with respect to the equal benefits clause, "[m]ost courts have held that 'the equal benefits' clause does not extend to private discrimination, and thus, requires state action." *See Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F.Supp.2d 27, 30 (D.D.C. 1999) (citing, *Provisional Government of Republic of New Afrika v. American Broadcasting Companies, Inc.*, 609 F. Supp. 104, 109 (D.D.C. 1985); *Mahone v. Waddle*, 564 F.2d 1018 (3d Cir. 1977); *Spencer v. Casavilla*, 839 F. Supp. 1014 (S.D.N.Y. 1993)).

[4] In the *Patterson* case, the U.S. Supreme Court held that the "right to make contracts" language in § 1981 did not apply to conduct occurring after a contract is formed, including a party's refusal to perform a specific contract term. *Patterson*, 491 U.S. at 183, 109 S.Ct. 2376. As part of the Civil Rights Act of 1991, Congress amended § 1981 to provide that the make and enforce contracts clause includes the making, performance, modification, and termination

plaintiff <u>cannot</u>, however, state a claim under § 1981 unless he has, or would have, rights under an existing, or proposed, contract that he wishes "to make and enforce." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479 126 S. Ct. 1246 (2006). A plaintiff alleging a § 1981 claim arising from the interference with contract rights must identify injuries flowing from a racially motivated breach ***of their own contractual relationship, not of someone else's***. *Id.* at 480 (emphasis added)

In the case at bar, it is undisputed that the bank accounts involved in the incident were the Business Accounts owned by SSI. Plaintiff has established that his corporation, SSI, has a contractual relationship with BOA attendant with those Business Accounts. SSI is not a party to this case, however; and Plaintiff has not established and cannot establish that he has a contractual relationship with BOA separate and apart from that of SSI. Thus, evidence of SSI's contractual relationship with BOA is insufficient as a matter of law to establish Plaintiff's § 1981 claim against BOA. This distinction is clearly explained by the Supreme Court in the *Domino's Pizza* case and is directly on point with the facts and law at issue in the case at bar.

In *Domino's Pizza,* like here, the respondent, John McDonald, a black man, was the sole shareholder and president of JWM Investments, Inc. (JWM), a Nevada corporation. *Domino's Pizza*, 546 U.S. at 472, 126 S. Ct. at 1247-48. He sued several parties in the U.S. District Court for the District of Nevada, claiming violations of § 1981. He alleged that "JWM and Domino's entered into several contracts under which JWM was to construct four restaurants in the Las Vegas area, which would be leased to Domino's." *Id.* In the course of discussions attendant with disputes between McDonald and an agent of Domino's relative to those contracts, an agent for Domino's allegedly said to McDonald, "'I don't like dealing with you people anyway,'" refusing

---

of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. See 42 U.S.C. § 1981.

to specify what she meant by "'you people.'" *Id.* at 473. The agent then threatened to use Domino's attorneys to "bury" McDonald if he should sue, and the contracts between Domino's and JWM remained uncompleted. *Id.*

Ultimately, McDonald filed a § 1981 claim against Domino's <u>in his personal capacity</u> alleging, in pertinent part, "that Domino's had broken its contracts with JWM because of racial animus toward McDonald, and that the breach had harmed McDonald personally by causing him to suffer monetary damages" as well as damages for pain and suffering, emotional distress, mental anguish and humiliation. *Id.,* at 473-74. Domino's filed a motion to dismiss the complaint for failure to state a claim. It asserted that McDonald could not bring a § 1981 claim against Domino's because McDonald was not party to the contract with Domino's. *Id.* at 474.

The District Court granted the motion holding that Domino's had relied "on the basic proposition that a corporation is a separate legal entity from its stockholders and officers and a corporation may have standing to assert a § 1981 claim but a president or sole shareholder may not step into the shoes of the corporation and assert that claim personally." *Id.* (internal citations omitted). The Court of Appeals for the Ninth Circuit reversed that decision holding that when there are "injuries distinct from that of the corporation, a nonparty like McDonald may nonetheless bring suit under § 1981." *Id.* (internal citations omitted).

The U.S. Supreme Court <u>reversed</u> the decision of the Ninth Circuit. The Supreme Court disagreed with McDonald's argument that because he "made and enforced contracts" for JWM, discrimination against him attendant with the contracts violates § 1981. The Supreme Court explained that,

> [T]he right to 'make contracts' guaranteed by the statute was not the insignificant right to act as an agent for someone else's contracting-any more than it was the insignificant right to act as amanuensis in writing out the agreement, and thus to 'make' the contract in that sense. Rather, it was

>the right-denied in some States to blacks, as it was denied at common law to children-to give and receive *contractual rights* on one's own behalf.

*Id.* at 475. The Court went on to hold that "when the Civil Rights Act of 1866 was drafted, it was well known that '[i]n general a mere agent, who has no beneficial interest in a contract which he has made on behalf of his principal, cannot support an action thereon.'" *Id.*, citing, 1 S. Livermore, A Treatise on the Law of Principal and Agent 215 (1818). While an individual seeking to make or enforce a contract under which he has rights will have a claim under 42 U.S.C. § 1981, one seeking to make or enforce a contract under which someone else has rights will not. *Id.* n. 2. "Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship, . . . under which the plaintiff has rights.'" *Id.* at 476.

The Court further held that a contractual relationship need not already exist, because § 1981 protects the would-be contractor along with those who already have made contracts. *Id.* "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Id.* at 476.

While McDonald's complaint did identify a contractual relationship between JWM and Domino's, it did not allege a contract pursuant to which McDonald's was party or had rights. The Court, citing "fundamental corporation and agency law" held that "***the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts***," despite the fact that McDonald "'***negotiated, signed, performed, and sought to enforce contracts' for JWM.***" *Id.* at 477 (emphasis added).

The Court rejected McDonald's alternative argument that a person who is an "'actual target' of discrimination" if he was "the reason that a defendant chose to impair a contractual

relationship" of a third party, and "who loses some benefit that would otherwise have inured to him had a contract not been impaired, may bring a suit." *Id.* at 478. The Court also rejected McDonald's policy argument that "unless his reading of the statute prevails, . . . many discriminatory acts will go unpunished . . . corporations, for instance, may choose not to bring suit for the racially motivated contract breach." *Id.* at 479. The Court in response explained that:

> It is not likely to be a common occurrence that the victim of a contract breach will forgo a potent available remedy. Injured parties usually will be the best proponents of their own rights. And if and when the holders of those rights do not wish to assert them, third parties are not normally entitled to step into their shoes. Moreover, § 1981 is only one of a multitude of civil rights statutes. . . .

*Id.* In reaching its holding that McDonald could not bring a § 1981 claim in his individual capacity, the Court stated that,

> Consistent with our prior case law, and as required by the plain text of the statute, we hold that a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes to make and enforce. Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's.

*Id.* at 479-80.

Here, the crux of Plaintiff's entire claim is that BOA, by refusing to complete the financial transaction between the two SSI Business Accounts, "interfered with the enjoyment of his contract rights" by "imposing a different and greater standard upon him as a depositor." (Am. Compl., ¶ 20). It is undisputed that Plaintiff's § 1981 claim arises from his attempt to withdraw and deposit funds between the two SSI Business Accounts, and BOA's refusal to complete that transaction. However, Plaintiff is not party to nor does he have any rights stemming from the contract between BOA and SSI governing the handling of deposits, withdrawals, and other financial transactions concerning those Business Accounts.

It is clear that, under District of Columbia law, "[t]he relationship between a bank and a depositor is a contractual relationship that is governed by the written agreement between the parties." *Geiger v. Crestar Bank*, 778 A.2d 1085, 1090 (D.C. 2001), quoting *Issac v. First Nat'l Bank of Maryland, D.C.*, 647 A.2d 1159, 1161 (D.C. 1994) and citing *Kiley v. First Nat'l Bank*, 102 Md. App. 317, 326-27, 649 A.2d 1145, 1149 (1994), *cert. denied*, 338 Md. 116, 656 A.2d 772, *cert. denied*, 516 U.S. 866 (1995). This contractual relationship is fixed by the account agreement consisting of the bank's rules and regulations for deposit accounts. *Geiger*, 778 A.2d at 1091. A signature card, coupled with rules and regulations of the bank, may constitute the terms and conditions of that contract. *See Kiley*, at 327, 649 A.2d at 1149.

Here, the Deposit Agreement, as well as the Signature Cards and the rules and regulations of BOA, makes up the "contract" between BOA and SSI. Plaintiff, like McDonald, is not party to that "contract." Therefore, even assuming *arugendo* that Ms. Elebesunu refused to complete the transaction because she stated to Plaintiff "you don't look like you own the business," the contract rights relative to the handling or refusal to handle the financial transaction stem from the contract between BOA and SSI, not Plaintiff. Accordingly, Plaintiff's § 1981 claim arises not out of his own contractual rights, but that of a third party, and his claim under 42 U.S.C. § 1981 must fail as a matter of law.

For the same reasons cited by the Supreme Court in *Domino's Pizza*, the fact that Plaintiff is the sole shareholder, president and CEO of SSI, who negotiated, signed, performed and enforced the Deposit Agreement pertaining to the Business Accounts is of no consequence. A "shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts," *Id*. at 477. In this case, Plaintiff must identify injuries flowing from a racially motivated breach of his <u>own</u> contractual relationship with BOA,

not of SSI's contractual relationship. Based upon the Supreme Court's decision in *Domino's Pizza*, Plaintiff's clear inability to do so entitles BOA to judgment prior to trial as a matter of law. *Id.* at 479-80.

## V.    CONCLUSION

For the forgoing reasons, Bank of America, N.A. respectfully requests that this Court grant its Motion in Limine and enter judgment as a matter of law in its favor.

Respectfully submitted,

/s/
Tessa Laspia Frederick (#465519)
Jessica A. duHoffmann (#476383)
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore, Maryland  21202
(410) 727-6464

Counsel for Defendant,
Bank of America, N.A.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, pursuant to Local Rule 5.4 that on the 20th day of March 2008, Counsel for Plaintiff, Donald Temple, Esquire, should receive electronic notice of the filing the foregoing ***Memorandum in Support of Motion in Limine*** at TemplePC@aol.com, which e-mail address has been designated by Plaintiff's counsel to receive notices of electronic filings in this case.

/s/
Tessa Laspia Frederick (#465519)