IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GEORGE BANKS, | * | |
| Plaintiff, | * | |
| v. | * | Case No. 05-CV-01688-HHK |
| BANK OF AMERICA, N.A., | * | |
| Defendant. | * | |

* * * * * * * * * * * *

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY
OF REGINALD RANDOLPH AND TO EXCLUDE EVIDENCE
RELATING TO ANY DAMAGES CLAIMED BY PLAINTIFF AS A
RESULT OF COUNSELING RECEIVED FROM MINISTER RANDOLPH**

Defendant, Bank of America, N.A. ("Defendant" or "Bank of America"), by and through its undersigned attorneys, and pursuant to the Federal and Local Rules of Civil Procedure, as well as this Court's Order of March 17, 2008 (paper no. 46), hereby files this Motion in Limine to Exclude Testimony of Reginald Randolph and to Exclude Evidence Relating to any Damages Claimed as a Result of Counseling Received from Minister Randolph, and states as follows:

1.  BOA moves in limine to exclude Minister Randolph from offering any expert opinion testimony regarding any alleged mental health diagnosis given to Plaintiff by Minister Randolph or the cause of such condition due to his complete lack of qualifications to testify to the same. BOA further moves to exclude his counseling records and his testimony regarding the same from evidence as such records were clearly made long after the counseling sessions occurred and are not business records made at or near the time the counseling services were rendered. In support of this Motion, BOA incorporates the Memorandum In Support of this Motion in Limine, filed contemporaneously herewith, which is incorporated herein by reference,

WHEREFORE, for the forgoing reasons, Bank of America, N.A. respectfully requests that this Court enter an Order:

a) Granting Bank of America, N.A.'s Motion in Limine;

b) Precluding Minister Reginald Randolph from offering any expert opinion testimony regarding Plaintiff's mental health or causation;

c) Precluding Plaintiff from offering into evidence any invoices or evidence of any damages claimed as a result of counseling received from Minister Randolph; and

d) Granting such further relief as the nature of this cause and justice require.

Respectfully submitted,

/s/
Tessa Laspia Frederick (#465519)
Jessica A. duHoffmann (#476383)
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore, Maryland 21202
(410) 727-6464

Counsel for Defendant,
Bank of America, N.A.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, pursuant to Local Rule 5.4 that on the 20th day of March 2008, Counsel for Plaintiff, Donald Temple, Esquire, should receive electronic notice of the filing the foregoing *Motion in Limine* at TemplePC@aol.com, which e-mail address has been designated by Plaintiff's counsel to receive notices of electronic filings in this case.

/s/
Tessa Laspia Frederick (#465519)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GEORGE BANKS, | * | |
| Plaintiff, | * | |
| v. | * | Case No. 05-CV-01688-HHK |
| BANK OF AMERICA, N.A., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF REGINALD RANDOLPH AND TO EXCLUDE
EVIDENCE RELATING TO ANY DAMAGES CLAIMED BY PLAINTIFF AS A
RESULT OF COUNSELING RECEIVED FROM MINISTER RANDOLPH**

Defendant, Bank of America, N.A. ("Defendant" or "BOA"), by and through its undersigned attorneys, and pursuant to this Court's Order of March 17, 2008 (paper no. 46), hereby files this Memorandum in Support of BOA's Motion in Limine to Exclude Testimony of Minister Reginald Randolph and to Exclude Evidence Relating to any Damages Claimed as a Result of Counseling Received from Minister Randolph, and states as follows:

I.     **INTRODUCTION**

Plaintiff alleges that he has sought counseling and "has suffered mental anguish and his self esteem has been damaged since the Defendant . . . decided to deprive him of use of his company funds even though he had provided two forms of identification required to withdraw funds from his business account." (*See* Pl's Supp. Ans. to Interrog. No. 21, attached hereto as **Exhibit A**). In discovery, Plaintiff identified Mr. Reginald Randolph ("Minister Randolph"), not as an expert, but as a person having knowledge about the facts of this case. Minister Randolph was not designated as an expert under Rule 26(b). However, it is anticipated that Plaintiff will

call Minster Randolph as an expert to testify that Plaintiff suffers some form of psychological or mental health condition as a result of the incident at issue in this case.

For the reasons set forth further below, BOA moves in limine to exclude Minster Randolph from offering any expert opinion testimony regarding any alleged mental health diagnosis given to Plaintiff by Minster Randolph or the cause of such condition due to his complete lack of qualifications to testify to the same. BOA further moves to exclude his counseling records and his testimony regarding the same from evidence as such records were clearly made long after the counseling sessions occurred and are not business records made at or near the time the counseling services were rendered.

## II.     FACTS IN SUPPORT OF MOTION

Plaintiff is the President and Chief Executive Officer of the District of Columbia corporation, Sentry Security, Inc. ("SSI"), which maintains two business accounts at Bank of America. (Memorandum Opinion and Order dated September 6, 2007, pp. 1-2 (hereinafter, "Opinion"); *see also, Banks v. Bank of America, N.A.*, 505 F. Supp. 2d 159 (2007) and Exh., A, Ans. No. 21.) Plaintiff, on the day at issue, sought to withdraw $1,000 from one of SSI's accounts, deposit $700 into a second SSI account, and keep the remaining $300 for himself. (Opinion, p. 2).

After BOA determined that it could not complete Plaintiff's transaction due to his failure to produce the appropriate identification, Plaintiff became got into a verbal altercation with an off-duty D.C. Metropolitan Police Officer and bank staff. (Opinion, pp. 2-3). As a result of his conduct, Plaintiff was arrested by the off duty police officer and charged with disorderly conduct. (Opinion, pp. 3-4) Plaintiff's lawsuit is based on his claim that BOA discriminated

against him because of his race and would not process the transaction that he requested. (*See generally*, Opinion, pp. 1-4).

In discovery, Plaintiff alleged that he began seeing Minister Randolph for his mental anguish and damaged self esteem because BOA refused to complete the transaction. It is expected that Minister Randolph will be called to testify in this matter and offer opinions regarding Plaintiff's mental health and his "diagnosis" that Plaintiff suffers from severe stress stemming from the incident at issue in this case. Plaintiff may also try to admit Minister Randolph's counseling records and invoices. Based upon Minister Randolph's deposition testimony, however, he is not qualified to offer expert opinions regarding Defendant's mental health or any diagnosis given. In addition, the invoices issued to Plaintiff are not admissible as a business record because they were not made at the time the services were rendered, were re-created from nothing other than Plaintiff's and Minister Randolph's memory and were in fact never intended to be paid and, in fact, were not paid by Plaintiff.

### III. ARGUMENT

#### A. Reginald Randolph Is Not Qualified To Offer Mental Health Opinions

Under the Federal Rules of Evidence and the Supreme Court's pronouncement on scientific evidence in *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), where there is a proffer of expert scientific testimony, the trial judge must determine whether the expert is proposing to testify to scientific knowledge that will assist the trier of fact to understand or determine a fact in issue. ( *Id.* at 591, 113 S.Ct. at 2796; *see also, Jenkins v. U.S.,* 307 F.2d 637, 643-645, 113 U.S.App.D.C. 300, 306 - 308 (C.A.D.C. 1962)).

As indicated in *Daubert*, Federal Rule of Evidence 702 presents the trial judge's primary obligation in admitting evidence: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." In contrast to a fact witness, "an expert is permitted wide latitude to offer opinions, including those that are not based on first-hand knowledge or observation." *Daubert,* at 592, 113 S.Ct. at 2796.

As set forth in *Jenkins v. U.S.,* 307 F.2d 637, 643-645, 113 U.S.App.D.C. 300, 306 - 308 (C.A.D.C. 1962):

> To warrant the use of expert testimony, then, two elements are required. First, the subject of the inference must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman, and second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth. The knowledge may in some fields be derived from reading alone, in some from practice alone, or as is more commonly the case, from both. The test, then, is whether the opinion offered will be likely to aid the trier in the search for truth. In light of that purpose, it is hardly surprising that courts do not exclude all but the very best kind of witness. Thus a general practitioner may testify concerning matters within a medical specialty if his education or experience, or both, involves demonstrable knowledge of the subject. Nor need a skilled witness on a medical subject be duly licensed to practice medicine. The general rule is that 'anyone who is shown to have special knowledge and skill in diagnosing and treating human ailments is qualified to testify as an expert, if his learning and training show that he is qualified to give an opinion on the particular question at issue.'

*Id.* (internal citations omitted).

Relative to this case *sub judice,* the diagnosis and categorization of a mental health condition and relating it to an incident in the past, "requires skill far in excess of that possessed by laymen." *Id.* Based upon Minister Randolph's deposition testimony, he is not qualified to

offer opinion testimony regarding Plaintiff's mental health or any correlation it has to BOA's refusal to process Plaintiff's transaction.

Specifically, based upon Minister Randolph's deposition testimony, he obtained a bachelor degree in psychology from Howard University in 1978. (Deposition of Reginald Randolph, a copy of which is attached hereto as **Exhibit B**, at p. 5). Minister Randolph then obtained a Master's Degree in Christian counseling from Logos College, which is not an accredited college, in 1990. (Exh. B, p. 5; *see also*, information regarding the college, attached hereto as **Exhibit C**). Minister Randolph testified that he is an "ordained minister in the Biblical College." (Exh. B, p. 5). However, both Minister Randolph and Plaintiff's counsel failed to produce his resume and BOA cannot locate any information on "Biblical College."

Relative to his qualifications, Minister Randolph testified that he worked as a probation officer for the District of Columbia Superior Court from 1986 to 1996. Exh. B, at p. 6. While at the Superior Court, he had training "where they would bring in professionals and teach you how to work with families under stress, admin youth, individual male, individual and family counseling and also child abuse counseling." (*Id.*) He further testified that he got certificates for completing these training programs. (*Id.*)

Minister Randolph testified that while with the Superior Court he worked "with families for five years, child abuse for a year, DWI's for a year." (*Id.* at pp. 7-8). He testified that he was in the "position as a counselor, trained as a probations officer, trained as a counselor." (*Id.* at p. 8). He went on to testify, albeit in a confusing manner, the following:

> At that time that I started with the court, we have specific areas of concentration and expertise. Because of my training and my Bachelor's degree and my training in different positions before I came to the court, I qualified to be trained as a family counselor . . . . So but that was one of my expertises [sic] for over five years. So we did, the Department of Social Services actually provides the service for their clients, in house services, they trained their staff.

(*Id.* at pp. 8-9).

Minister Randolph then testified further regarding his training that he,

> work[s] with several foster care agencies, which also trained us in working with families, individuals in terms of also providing ongoing training . . . [s]o once I came out of the court, because I was called to minister, so I have my own counseling and ministry, I also work with several foster care agencies within the District of Columbia.

(*Id.* at pp. 9-10).

He then testified that because of his "licensure", he can do his "own independent counseling." (*Id.* at p. 10). He testified that he became a licensed professional counselor in the District of Columbia in 1999. (*Id.* at pp. 10-11). However, he admitted that he did not have to complete any courses or take any tests to obtain his license because he was "grandfathered in." (*Id.* at p. 11).

Minister Randolph testified that he started his own business and ministry. He "meets the spiritual needs, as a minister and as a life professional counseling, I deal with the mental health." (*Id.* at p. 12). He further testified,

> . . . I had a Sunday church for six years. I have what they call an outreach center, where people call in or come in who have needs. I work with other churches in the area too. Because of my expertise in counseling, they call me or I -- you know, they recognize me. I either go speak or help the other ministries build tutoring programs, counseling, family counseling, so they actually send them to me as the outreach, so I help people with . . .the emotional spiritual and mental needs."

(*Id.* at p. 13).

Minister Randolph has never held any teaching positions, nor has he done any research or had any publications relative to counseling or mental health issues. He apparently has only testified as an "expert" in three or four child abuse cases because he has a "national certification

as a sexual offender treatment specialist." He has never been recognized as an expert in post traumatic stress disorder or any other mental health condition or capacity. (*Id.* at p. 18).

Minister Randolph further testified that he does not diagnose people in his counseling business and refers people to psychologists or psychiatrists. (*Id.* at p. 23; see also, p. 78). He testified relative to his ability to diagnose and treat depression as follows:

> Q. If someone comes to you with depression, undiagnosed depression, ups and downs, do you make diagnoses whether they suffer from a depressive disorder or is that something that you would refer out?
>
> A. They come to me with depression, it depends what form they come to me for.
>
> Q. Not the spiritual.
>
> A. **Spiritual, I can discern. I've been trained to discern and evaluate the spiritual piece.** That's why, it's a calling from God, plus the expertise from the biblical training I have. So, if they are coming from that aspect, yes. If they are coming from the secular point of view, and I can see through talking to them, and they say they are depressed, then I don't need an evaluation. I automatically know how to get them the coping skills and all that.

(*Id.* at pp. 23-4)(emphasis provided).

While Mr. Randolph is a licensed professional counselor, he clearly lacks the special knowledge and skill to diagnose and treat human mental health conditions or offer opinions about the cause of those conditions. He does not have the education, training or experience to give any opinions relative to any alleged mental health condition suffered by Plaintiff or its cause.

As set forth in *Jenkins,* many psychologists are not even qualified to testify concerning mental disease or defect—let alone a licensed professional counselor that was "grandfathered in." As set forth by the court in that case,

> [Psychologists'] training and experience may not provide an adequate basis for their testimony. Some psychologists, for example, teach and engage in theoretical research in fields unrelated to the diagnosis and treatment of mental disease. Others are employed in personnel administration, still others advise industry on problems of employee morale. Such experience does not ordinarily provide the skill essential to offer expert testimony concerning mental disorders. On the other hand, the Ph.D. in Clinical Psychology involves some- and often much- training and experience in the diagnosis and treatment of mental disorders. Typically, candidates are trained, inter alia, in general psychology, theory of personality and psychodynamics, psychopathology, diagnostic methods, therapeutic techniques, selected aspects of physiology and anatomy, and clinical methods. A one-year internship in a mental hospital is required for this degree. After graduation, many clinical psychologists administer and interpret diagnostic tests which elicit the patient's intellectual level, defenses, personality structure, attitudes, feelings, thought and perceptual processes. In many institutions and clinics their reports, which regularly include opinions concerning the presence or absence of mental disease or defect, are important aids to psychiatrists who customarily have the final responsibility for diagnosis. Some psychologists, moreover, regularly administer psychotherapy and related non-organic therapies in the treatment of certain types of mental disorders.

*Jenkins,* 307 F.2d at 643-645, 113 U.S.App.D.C. at 306 - 308 (internal citations omitted).

In this case *sub judice*, based upon Minister Randolph's forgoing testimony, he clearly lacks the scientific knowledge, skill, training or education to offer opinions regarding Plaintiff's mental health or the cause of Plaintiff's alleged mental condition. Minister Randolph is not a psychiatrist or psychologist. In addition, although he is a "licensed professional counselor", he was never required to complete any courses or sit for any exams to become licensed. He has never done any research, writing or teaching on mental health. Rather, he was "grandfathered in" based upon his experience as a probation officer/counselor for the D.C. Superior Court. Finally, the crux of his counseling experience since leaving the court has been largely spiritual in nature and based upon bible teachings.

While some psychologists may be qualified to render expert testimony in the field of mental disorders due to their training and education, a licensed professional counselor that lacks

any training, experience or skill in mental health evaluation, diagnosis and causation is not qualified to offer opinions regarding the same. Thus, while Minister Randolph, as a fact witness, may be able to testify to meeting with Plaintiff, he is not qualified to offer opinion testimony regarding Plaintiff's mental health or causation of any mental health condition.

    **B.    Reginald Randolph's Records And Testimony Regarding His Counseling of Plaintiff Lack Any Indicia of Reliability or Trustworthiness And Must Be Excluded From Evidence.**

Minister Randolph's invoices[1] and his testimony based upon the same are not admissible. First, the records are hearsay under Fed. R. Evid. 803, and the hearsay exception for business records would not apply. Second, Randolph's testimony regarding his counseling lacks any indicia of reliability or trustworthiness and should be excluded from evidence.

    The Invoices.

The business records exception under Rule 803(6) allows for business records made at or near the time at issue by a person with knowledge if kept in the ordinary course of business, which was a regular practice of that business to make such a record. Fed. R. Evid. 803(6). However, if the "source of information or the method or circumstances of preparation indicate a lack of trustworthiness", the exception will not apply. *Id.* As set forth in *United States v. Baker,* 693 F.2d 183, 188 (D.C.Cir.1982):

> The justification for this [business records] exception is that business records have a high degree of accuracy because the nation's business demands it, because the records are customarily checked for correctness, and because recordkeepers are trained in habits of precision. Double hearsay exists when a business record is prepared by one employee from information supplied by another employee. If both the source and the recorder of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business, the multiple hearsay is excused by Rule 803(6). However, if the source of the information is an outsider, Rule 803(6) does not, by itself, permit the

---

[1] Plaintiff produced "invoices" from Minister Randolph's counseling in support of his claim for damages. Those invoices were marked as an exhibit to Randolph's deposition, and are attached hereto as **Exhibit D**.

> admission of the business record. The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have.

*Id.; see also, Boca Investerings Partnership v. U.S.*, 128 F. Supp. 2d 16, 20 -21 (D.D.C. 2000).

Rule 803(6) does not permit the admission of a business record if the source of the information is an outsider. (*Id.*) It is only admissible if the outsider's statement falls within another hearsay exception. (*Id.*)

Based upon Minister Randolph's testimony, his invoices are not admissible under the business records exception for the following reasons: Minister Randolph testified that he began giving Plaintiff spiritual counseling for anxiety and depression related to his business and family in about 2000 or 2001, prior to the incident subject of this case. (Exh. B at pp. 20, 30-33). Minister Randolph testified that he mainly counsels Plaintiff in "spiritual, scriptures and prayer." (*Id.* at p. 21.)

Minister Randolph testified that in 2003 or 2004, long after the occurrence of the June 2002 incident in this case, Plaintiff told him about the events in this case, and Minister Randolph began giving him secular counseling. Although he testified that he keeps notes on counseling sessions with other people, Minister Randolph admitted that he did not keep any records of his counseling of Plaintiff. (*Id.* at p. 39, 45-46). In addition, Minister Randolph did <u>not</u> charge Plaintiff for counseling. (*Id.* at 39).

Despite his foregoing testimony that he does not diagnose people, as well as his lack of qualifications which were previously addressed, Minister Randolph testified at deposition that he diagnosed Plaintiff with "severe stress due to a traumatic incident that happened to him [at the bank]." (*Id.* at pp. 46-7). He later recalled diagnosing him with "mild depression," but testified, "I'm not going to [diagnose] him post-traumatic stress disorder." (*Id.* at p. 74, 77).

Notably, everything Minister Randolph testified to during his deposition relative to his counseling of Plaintiff and the basis for his assessment of Plaintiff regarding the incident is not based upon any notes or records, but his memory of those counseling sessions in July of 2003, his current conversations with Plaintiff and his invoices. (*Id.* at pp. 56-7). The following (albeit lengthy) deposition testimony is plain evidence of his lack of qualifications, the inadmissibility of his "invoices," as well as his overall lack of credibility as Plaintiff's "counselor":

> Q. I'm trying to get an understanding of what your idea was the incident was based on, what he told you during counseling sessions.
>
> A. He told me he was discriminated against, he had his proper I.D., he gave the proper I.D., and the lady said, "You don't look like" – I didn't bring the written, so I'm giving you an estimate of what I remember him saying to me. That he thinks he don't look like somebody who can own a business, and from there it ain't worth this, you're not this and that," and the next thing I know –
>
> * * * *
>
> Q. Did he ever say there was an undercover agent standing in line who arrested him on his own accord?
>
> * * * *
>
> A. I don't remember that.
> Q. He didn't tell you that?
> A. I don't remember.
> Q. Did you keep any notes?
> A. I basically work with George [Banks].
> Q. So everything you know, that you're saying here today, is based on your memory from what he told you three years ago?
> A. Well, we talk about it now.
> Q. Does he talk about his case to you?
>
> * * * *
>
> A. Um-hum.
>
> * * * *

Q. You said you didn't charge him before, why in July 21st, 2003 did you start keeping records of an invoice?

A. Well he asked me for an invoice.

Q. Why did he ask you for an invoice?

A. He said he wanted to pay me back for the services that he couldn't pay me back for. So I provided an invoice.

Q. And when did you provide this invoice to him?

A. The date is at the top, July the 24th.

Q. You provided this on July 24th, 2006. Did you already have a record or is this something you created July 24th, 2006?

A. What George [Banks] wrote down, what I call little things I put on my calendar, but George had—I really didn't have any records. I basically talked to Mr. Banks and I talked, we know dates and times. We know times we met.

Q. So this is an estimate of how long?

A. It's all an estimate. Once again it's an estimate.

Q. So this was not kept at the time of the treatment at or near the time of the treatment?

A. No, no. Estimate, strictly estimate.

Q. It was based upon your discussion with George [Banks] recreating the time?

A. Right, Right . . ..

* * * *

Q. Were some of these numbers at times given to you by George [Banks]?

A. Yes.

Q. How about the rate? I see sometimes it's a hundred dollars and sometimes its fifty dollars, sometimes – how did you come up with . . . a rate?

A. Well , I usually—George wanted to repay my ministry for all the work I've done with him.

* * * *

     Q.    Does this rate include kind of a payback for the work you had done from 2000 to 2003, all the spiritual counseling and –

     A.    Everything.

     Q.    Okay.

     A.    **Probably more than that.** Excuse me for saying that. But it's not about money. And can I say something for the record? It's not about money. He needed this because he needed something to show that he was in counseling. For me it's not about money.

     Q.    Did he say he needed it for his lawsuit?

     A.    He needed it to show he was receiving counseling.

\* \* \* \*

     Q.    Has he ever paid you any of this money?

     A.    No.

     Q.    Have you sent any demands for any of this money?

     A.    I don't have demands for George Banks.

*Exh. B,* at pp. 54-62.

Based upon the foregoing testimony, Plaintiff created Minister Randolph's invoices for use in this litigation and thus these records are not business records and are not admissible under the business records exception or any other hearsay exception. What is most disconcerting is the fact that these invoices include a "payback" for counseling that took place prior to the incident at issue in this case.

These invoices, and Minister Randolph's testimony related to the invoices are not only inadmissible under the hearsay rule, they, along with Minister Randolph's testimony regarding his counseling of Plaintiff, lack any indicia of reliability or trustworthiness.

## V.   <u>CONCLUSION</u>

For the forgoing reasons, Defendant, Bank of America, N.A. respectfully requests that this Court grant its Motion in Limine and bar any expert testimony from Minister Randolph and

bar Plaintiff from introducing into evidence the invoices allegedly generated by Minister Randolph for this case.

                                          Respectfully submitted,

                                          _____/s/_____
                                          Tessa Laspia Frederick (#465519)
                                          Jessica A. duHoffmann (#476383)
                                          MILES & STOCKBRIDGE P.C.
                                          10 Light Street
                                          Baltimore, Maryland 21202
                                          (410) 727-6464

                                          Counsel for Defendant,
                                          Bank of America, N.A.

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY, pursuant to Local Rule 5.4 that on the 20th day of March 2008, Counsel for Plaintiff, Donald Temple, Esquire, should receive electronic notice of the filing the foregoing ***Memorandum in Support of Motion in Limine*** at TemplePC@aol.com, which e-mail address has been designated by Plaintiff's counsel to receive notices of electronic filings in this case.

                            ____/s/_____
                            Tessa Laspia Frederick (#465519)